UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARCISO FUENTES,<br><br>   Plaintiff,<br><br>  v.<br><br>DISH NETWORK L.L.C.,<br><br>   Defendant. | Case No. 16-cv-02001-JSW<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 129 |

Now before the Court for consideration is the motion for class certification filed by Plaintiff Narciso Fuentes ("Fuentes"). The Court has considered the parties' papers, relevant legal authority, including the parties' supplemental briefs regarding *DiCarlo v. Money Lion*, 988 F.3d 1148 (9th Cir. 2021), and the record in this case. The Court HEREBY DENIES Fuentes' motion.

## BACKGROUND

**A. Factual Background.**

In August 2015, Fuentes, who alleges he only speaks Spanish, received promotional materials in the mail from DISH. The promotional materials were in Spanish, contained a telephone number, and referred to an opportunity to obtain DISH satellite television service for $31.99 for the first six months and $39.99 for the following six months. (Second Amended Complaint ("SAC") ¶ 14; *see also* Dkt. No. 129-1, Declaration of Elliot Conn ("Conn Decl."), ¶ 5, Ex. D, Deposition of Mark Vervaet ("Vervaet Depo.") at 18:8-17; Dkt. No. 137-1 Declaration of Clifford Yin ("Yin Decl."), ¶ 2; Dkt. No. 137-2, Yin Decl., Ex. A, Deposition of Narciso Fuentes ("Fuentes Depo.") at 73:5-25, & Fuentes Depo. Ex. 41.) Fuentes called the number and spoke with a DISH employee, Paulina Nunez, who spoke Spanish and who "explained the terms of his

rental of the satellite television receivers and monthly television service." (SAC ¶¶ 15-16; Fuentes Depo. at 52:23-53:2, Fuentes Depo. Exs. 33-34 (Transcriptions of phone call).) Fuentes did subscribe to DISH, but he terminated his subscription in August 2017 and has not subscribed since that time. (Fuentes Depo. at 45:11-19, 237:1-9.)

DISH maintains a toll-free line for prospective customers who speak Spanish, and the agents who receive these calls provide "disclosures" to customers, which have not changed in any significant way since 2012. (Vervaet Depo. at 49:16-18, 75:11-18.) If a prospective customer decides to subscribe, the sales agent will read the terms of service, or disclosures, and will inform the customer that they will be required to sign a contract when the service is installed. The prospective customer cannot modify or propose new terms, and the contract cannot be signed until the service is installed, in the event there are problems with installation. (*Id.* at 65:2-66:24, 68:6-16; Conn Decl., ¶ 4, Ex. C, Deposition of Megan Casados ("Casados Depo.") at 66:8-25.)

If DISH's service can be installed, a new customer signs a customer plan agreement. That agreement must be signed before a technician leaves the home and cannot be signed elsewhere. (Casados Depo. at 73:8-74:6; Vervaet Depo. at 33:2-15.) DISH technicians carry mobile devices and use those devices as the default method to present the plan agreement to a customer and to obtain their signature on the agreement. Paper copies of the agreements are available if a customer asks for one, but Spanish versions of the agreements are not on the mobility devices. (Casados Depo. 57:10-59:2, 62:1-10 79:18-24, 109:19-110:1.) Fuentes contends that he signed his agreement on a mobility device, that he could not read it, and that he was not provided with a Spanish version of the agreement before he signed it.

**B.  Fuentes' Claims.**

Fuentes brings four claims against DISH. First, he argues DISH violated California's Home Solicitation Sales Act ("HSSA"), which requires that a contract falling within its scope must include certain language about a buyer's right to cancel and must be written in the same language as an oral sales presentation. *See* Cal. Civ. Code §§ 1689.6(a)(1), 1689.7(a)(1)(c).

Second he claims DISH violated California Civil Code section 1632 ("Section 1632"), which requires that

2

> [a]ny person engaged in a trade or business who negotiates primarily in Spanish, …, orally or in writing, in the course of entering into [specified contracts], shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, that includes a translation of every term and condition in that contract or agreement.

Cal. Civ. Code § 1632(b). As relief for those two claims, Fuentes seeks a declaration that DISH violated the statutes and seeks recission under Section 1632. *See* Cal. Civ. Code § 1632(k).

Third, Fuentes alleges DISH violated California's Consumer Legal Remedies Act ("CLRA"), Civil Code sections 1750, *et seq.*. He alleges DISH violated Section 1770(a)(14) because it represented to Spanish speaking consumers that its contracts were final and binding, "when in fact they were entitled to a contract in Spanish and had the right to cancel." (SAC ¶ 64(a).) He also alleges DISH inserted an unconscionable provision into its contracts, in violation of Section 1770(a)(19), by negotiating its contracts in Spanish and providing only an English version of the contract at execution. (*Id.* ¶ 64(b).) Finally, Fuentes alleges DISH violated each prong of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*.

Fuentes asks the Court to certify the following class and subclass:

> All California consumers who, at any time 4 years preceding the filing of this action through the present[1]:
>
> (a) subscribed to purchase direct-broadcast satellite television from DISH NETWORK after receiving a sales presentation in Spanish on DISH NETWORK's toll-free Spanish-only telephone line, and
>
> (b) by the time of TV equipment and service installation, had signed only an English language contract presented by DISH NETWORK
>
> All California consumers who, at any time from 4 years preceding the filing of this action through the present:
>
> (a) subscribed to purchase direct-broadcast satellite television from DISH NETWORK, for a 24-month term after receiving a sales presentation in Spanish on DISH NETWORK's toll-free Spanish-only line, and

---

[1] Fuentes originally filed the case state court on March 7, 2016. Therefore, the class period runs from March 7, 2012 through the present.

3

(b) by the time of execution of [the] direct-broadcast satellite television agreement, were not provided with a translation of the agreement in Spanish, that included a translation of every term and condition in that agreement.[2]

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23") and the factors set forth in Rules 23(a) and 23(b). As the party to seeking to certify a class, Fuentes must "affirmatively demonstrate" compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Therefore, he bears the burden to show that he meets each Rule 23(a) factor and that he meets at least one factor under Rule 23(b). *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).

In order to determine if Fuentes has met his burden, the Court must conduct a "rigorous analysis" of the Rule 23 factors, which necessarily entails "some overlap with the merits" Fuentes' underlying claims. *Wal-Mart Stores*, 564 U.S. at 351. However, the Court may consider merits questions only to the extent such questions are relevant to determining whether Fuentes has met his burden to satisfy the Rule 23 prerequisites.[3] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The decision to grant or deny class certification is within the Court's discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

---

[2] DISH notes that the proposed subclass is not alleged in the SAC. Courts may limit their consideration to the class definition proposed by the plaintiff in a complaint, especially where the plaintiff has not sought leave to amend or proposes a class broader than that alleged in a complaint. *See, e.g., Richie v. Blue Shield of California*, No. 13-cv-2693-EMC, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014) (citing cases). DISH has not argued it has been prejudiced by the inclusion of the subclass. Therefore, the Court has not limited its analysis to the class definition set forth in the SAC.

DISH also argues that the definition of the class and subclass are not based on objective criteria because there may be members of the class who asked for and were provided with translations of the relevant contracts. In light of the Court's ruling, the Court does not reach this argument.

[3] DISH argues that Fuentes cannot prevail on any of his claims for relief. (*See* Opp. Br. at 18:7-20:26.) The Court has considered those arguments solely to determine if Fuentes can meet his burden under Rule 23.

### A. The Impact of the Arbitration Ruling.

In August 2015, DISH added an arbitration clause to its contracts. (Dkt. No. 137-10, Declaration of Shannon Picchione ("Picchione Decl."), ¶ 10.) The Court found that Fuentes agreed to arbitrate and that the parties delegated issues of arbitrability to the arbitrator, and it granted DISH's motion to compel arbitration. The arbitrator ruled that DISH's arbitration clause violated *McGill v. Citibank*, 2 Cal. 5th 945 (2017). For that reason, and others, the arbitrator concluded it could not adjudicate the parties' dispute unless they both consented, which they did not. (Yin Decl., ¶ 8, Ex. G, Arbitration Ruling.)

The parties agreed that "[t]he arbitrator's decision and award are final and binding, subject only to the limited court review permitted under the FAA[.]" (Picchione Decl., ¶ 10 (quoting Arbitration Clause § 12.E).) It is undisputed that the Arbitration Ruling is binding on Fuentes and on DISH. The issue is whether DISH would be precluded from arguing the Arbitration Clause is enforceable against absent class members. The Court applies California law to determine the preclusive effect of the Arbitration Ruling. *See NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180-81 (9th Cir. 2019); *Bates v. Union Oil Co. of Cal.*, 944 F.2d 647, 649 (9th Cir. 1991).

Under California law, "[a] federal judgment has the same effect in [California courts] as it would have in a federal court." *Younger v. Jensen*, 26 Cal. 3d 397, 411 (1980). If a federal court confirms an arbitration award, the resulting judgment qualifies as a federal judgment. *See NTCH-WA, Inc.*, 921 F.3d at 1180. However, in a separate Order, the Court has denied Fuentes' motion to confirm the Arbitration Ruling. Therefore, it remains unreviewed. In addition, the parties did not agree that a ruling would be binding on non-parties to the arbitration. For these reasons, the Court concludes it cannot give the Arbitration Ruling preclusive effect to absent class members. *See, e.g., Vandenberg v. Superior Court*, 21 Cal. 4th 815, 824 (1999) (holding that "a private arbitration award, even if judicially confirmed, may not have nonmutual collateral estoppel effect under California law unless there was an agreement to that effect in the particular case").

//

**B.     The Rule 23(a) Factors.**

Under Rule 23(a), a court may certify a class only if (i) the class is so numerous that joinder of all members is impracticable, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class.

**1.     Numerosity.**

Rule 23(a)'s "numerosity" factor requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] … [j]oinder has been deemed impracticable in cases involving as few as 25 class members[.]" *Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (internal citations omitted) (finding joinder was impractical where there were over 236 members in the putative class).

Fuentes argues there are approximately 171,877 putative class members and estimates the subclass would consist of about 90% of those individuals. Fuentes draws that figure from DISH's responses to an interrogatory that asked for its "best estimate" of the number of putative class members. (Conn Decl., ¶¶ 2-3, Exs. A, B.) Using the definition set forth in the SAC, DISH responded it could not ascertain the total number of class members. It did state that "approximately 171,877 California consumers activated service following a phone conversation on a DISH Spanish-language hotline between March 1, 2012 and June 30, 2020." (Conn Decl., Ex. B, DISH Supp. Resp. to Interrogatory No. 1.) DISH correctly notes that this figure only addresses the first part of each proposed class.

DISH does not proactively provide its customers with paper copies of agreements, including Spanish translations, but it will provide a paper copy – in English or in Spanish – upon request. (Casados Depo. at 106:13-16, 116:16-117:7.) In addition, the record shows that DISH provides cancellation notices required by the HSSA for a limited number of contracts. (Conn

Decl., ¶ 2, Ex. A.) In light of Fuentes' theory of liability, the Court concludes he has met his burden to show the class and the subclass are sufficiently numerous.

### 2. Commonality.

The commonality requirement under Rule 23 is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and the Ninth Circuit has construed this factor permissively. *See, e.g., Hanlon*, 150 F.3d at 1019. "[A] common contention need not be one that 'will be answered, on the merits, in favor of the class.'" *Stockwell v. City & Cty. of San Francisco,* 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting *Amgen*, 568 U.S. at 459). Rather, a common question "must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. It also is not necessary for all questions of fact and law to be common in order to satisfy Rule 23. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). The purpose of the commonality requirement is (i) to ensure that missing putative class members are fairly and adequately represented and (ii) to facilitate practical and efficient case management. *Id.* For commonality, what matters is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation omitted).

Fuentes argues that whether DISH's contracts are made at "other than appropriate trade premises" and whether they qualify as retail installment contracts are a few of the type of common questions that will generate common answers. Fuentes also presents evidence that DISH trains the employees who answer calls to its toll-free lines to use a call-flow and to read certain disclosures, preferably verbatim, that have had no significant changes since 2012. Prospective customers cannot modify the terms of the disclosures and are informed they will be required to sign a contract at the time equipment is installed. (Vervaet Depo. at 19:3-20:16, 49:16-18, 65:2-66:24, 66:6-16, 75:11-18; Casados Depo. at 66:8-25.) The record also shows that DISH does not proactively provide Spanish speaking customers with a translation of its contracts before they are executed. Contrary to DISH's arguments, the Court concludes this testimony supports Fuentes' argument that common policies and practices exist.

7

DISH's remaining arguments on commonality focus on why Fuentes cannot prevail on the merits of the claims, but the Court must consider the merits of the claims to consider whether there is, for example, "a common practice that could affect the class *as a whole*." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (emphasis in original) (concluding district court failed to engage in rigorous analysis to determine if evidence could show commonality in claims of gender discrimination). DISH's arguments do not demonstrate that the asserted problem "'exhibits some fatal dissimilarity' among class members that would make use of the class-action device inefficient or unfair. … Instead, what [DISH] alleges is a fatal similarity - an alleged failure of proof as to an element of [Fuentes'] cause[s] of action. Such a contention is properly addressed at trial or in a ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to certify a proposed class." *Amgen*, 568 U.S. at 470.

The Court concludes Fuentes has met his burden on the commonality factor.

### 3. Typicality and Adequacy.

DISH also argues that Fuentes is neither a typical nor an adequate class representative. "Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)). The typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020.

In order to determine whether the adequacy prong is satisfied, courts consider two questions. First, "[d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members." *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003).[4] Second,

---

[4] DISH has not argued that class counsel are inadequate. Based on the record presented, the Court concludes Fuentes to show counsel would adequately represent the interests of the class.

"will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* Because Fuentes is the only class representative at this time, the Court will closely examine DISH's challenge to his ability to adequately represent the class. *See, e.g., Tan v. GrubHub*, No. 15-cv-05128-JSC, 2016 WL 4721439, at *2 (N.D. Cal. July 19, 2016) (citing *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986)).

DISH argues Fuentes is neither a typical nor an adequate class representative because he admitted in his deposition that he made a contract with DISH during the phone call in August 2015. DISH argues these admissions will prevent him from credibly arguing that class members did not enter into contracts until a DISH representative installed the equipment. The Court does not construe Fuentes' deposition testimony that he believed he reached an agreement with DISH on the length of a contract to be an admission that a contract was formed during that call.

DISH also argues Fuentes is neither a typical nor adequate class member because he is not subject to a defense that it can raise with respect to class members, *i.e.* that they must arbitrate their claim. It also argues Fuentes does not have standing to challenge the enforceability of that arbitration clause. The existence of an arbitration agreement that may be applicable to the putative class, but not to the class representative, may preclude class certification. *Compare Andrews v. Ring, LLC,* No. 20-cv-00889-RGK-SP, 2020 WL 6253319, at *3-*4 & n.1 (C.D. Cal. Sept. 17, 2020) (finding plaintiff neither typical nor adequate where court determined he was not bound to arbitrate and stating that once it determined the plaintiff was not subject to agreement, the plaintiff "lacked standing to challenge its enforceability"), *Tan*, 2016 WL 4721439, at *3 (finding plaintiff, who opted out of arbitration agreement, did not satisfy typicality or adequacy requirements) *with Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) (finding that individualized issues would not predominate where defendant added arbitration clause to user agreement during class period because "it does not appear that there will need to be an individualized inquiry as to whether the arbitration clause is generally enforceable"). The Ninth Circuit has suggested, albeit

---

(*See* Conn Decl., ¶¶ 13-25; Dkt. No. 130-2, Declaration of Arthur Levy.) Bryan Kemnitzer withdrew his request to be appointed class counsel but reserved the right to ask for fees for his participation in this case. (*See* Dkt. No. 130-3, Declaration of Bryan Kemnitzer.)

9

in an unpublished opinion, that it would be an abuse of discretion to certify a class that consisted of persons who signed arbitration agreements including class action waivers and those who did not. *See Avilez v. Pinkerton Gov't Servs.*, 596 Fed. Appx. 579 (9th Cir. 2015).

By virtue of the Arbitration Ruling, Fuentes is not required to arbitrate his claims. The arbitrator's primary ruling that the clause is not enforceable under *McGill* is a legal ruling based on the express terms of the arbitration clause and did not depend on any of the factual circumstances that DISH argues are unique to Fuentes. Although the Court agrees that resolution of that issue would not overwhelm the litigation, as the court concluded in *Ehret*, Fuentes does not seek relief under Rule 23(b)(3). Therefore, this case is unlike *Ehret* because predominance is not an issue. Fuentes has not provided the Court with a persuasive argument, or authority, that he, as someone not bound to arbitrate, continues to have a legal interest in arguing the arbitration clause is not enforceable against absent class members.[5] The Court concludes that prevents him from meeting his burden to satisfy Rule 23(a)'s typicality and adequacy factors. *See, e.g., Ring,* 2020 WL 6523319, at *3-4; *Tan*, 2016 WL 4721439, at *2; *cf. Berman v. Freedom Financial Network, LLC*, 400 F. Supp. 3d 964, 984-88 (N.D. Cal. 2019) (denying motion for class certification without prejudice where court found plaintiff neither typical or nor adequate representative based on defense that would not be applicable to other class members).

Accordingly, the Court DENIES Fuentes' motion for class certification.

## CONCLUSION

For the foregoing reasons, the Court DENIES Fuentes' motion for class certification.

**IT IS SO ORDERED**.

Dated: June 24, 2021

JEFFREY S. WHITE
United States District Judge

---

[5] It does not appear that the *Ehret* court was called upon to consider whether the plaintiff could effectively argue the arbitration clause was not enforceable on behalf of the proposed class.

10